# United States Court of Appeals
## For the First Circuit

No. 20-1251

VERONICA LUZ MALAVER AVENDANO,

Plaintiff, Appellant,

v.

LEONARDO ALFONZO BLANCO BALZA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Howard, Chief Judge,
Barron, Circuit Judge,
and Katzmann,* Judge.

Matthew P. Barach, with whom Barach Law Group LLC was on brief, for appellant.
Shamis N. Beckley, with whom Dana M. McSherry, Annabel Rodriguez, and McDermott Will & Emery LLP were on brief, for appellees.

January 11, 2021

---

* Of the United States Court of International Trade, sitting by designation.

**KATZMANN**, **Judge**. This wrenching case involves the application of the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) and its implementing statute to a father's wrongful retention of a child, herein "G\*" to protect his privacy. See Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg. 10,494-01 (Mar. 26, 1986); International Child Abduction Remedies Act (ICARA), 22 U.S.C. § 9001 et seq. G\*'s mother, plaintiff-appellant Veronica Luz Malaver Avendano (Avendano), sought G\*'s return to Venezuela, alleging that G\*'s father, defendant-appellee Leonardo Alfonzo Blanco Balza (Balza), abducted G\* in contravention of a Venezuelan child custody order and the Hague Convention. The district court determined that Balza admitted to unlawfully retaining G\* in contravention of the Hague Convention and the implementing statute. However, after determining that Balza had established that G\* is a mature child such that the court should consider G\*'s stated desire to remain with his father in the United States, the district court denied Avendano's petition for return of her son to Venezuela. Avendano appeals that decision. We affirm.

## I. BACKGROUND

### A. Hague Convention Framework

The Hague Convention "aims to deter parents from abducting their children to a country whose courts might side with

them in a custody battle." Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 305 (1st Cir. 2019) (citing Darín v. Olivero-Huffman, 746 F.3d 1, 7 (1st Cir. 2014)). Relevant here, the United States and Venezuela are contracting parties to the Hague Convention. See Status Table, Hague Conf. on Priv. Int'l L., https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 (last visited Dec. 21, 2020). In the United States, ICARA implements the Hague Convention and permits a parent to petition a federal or state court to return an abducted child under the age of sixteen to the country of the child's habitual residence. See 22 U.S.C. §§ 9001, 9003(b). The Hague Convention applies only to determine whether a child should be returned, see Hague Convention, art. 1, and does not empower the court to make any determinations regarding child custody. The court simply asks whether a custody decision should be made in the United States or in the country of the child's habitual residence. Díaz-Alarcón, 944 F.3d at 305-06; Walsh v. Walsh, 221 F.3d 204, 218 (1st Cir. 2000).

"The removal or retention of a child is to be considered wrongful where a) it is in breach of rights of custody . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) . . . those rights were actually exercised . . . ." Hague Convention, art. 3. The Hague Convention favors custody decisions be made by the courts

- 3 -

of the country of habitual residence, Mendez v. May, 778 F.3d 337, 343 (1st Cir. 2015), and the "re-establishment of the status quo disturbed by the actions of the abductor," see Elisa Pérez-Vera, Explanatory Report: 1980 Hague Conference on Private International Law, in 3 Acts and Documents of the Fourteenth Session 426, 430 (1982) (Pérez-Vera Report).[1]  The Convention carves out few exceptions to this strong presumption of return of the child to his or her country of habitual residence.  See Hague Convention, art. 13.    Furthermore, "courts construe these exceptions narrowly."  Díaz-Alarcón, 944 F.3d at 306 (citing Nicolson v. Pappalardo, 605 F.3d 100, 105 (1st Cir. 2010)).  The exception relevant here permits the court to decline to order the child returned "if [the court] finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views" (herein "the mature child exception").  Hague Convention, art. 13.  The wrongful abductor must prove that the child is mature enough for the court to consider his or her stated desire by a preponderance of the evidence.  22 U.S.C. § 9003(e)(2)(B).

---

[1] The Pérez-Vera Report refers to the travaux préparatoires of the Hague Convention, which provides the official history and commentary of the text of the treaty as prepared by "the official Hague Conference reporter" for the Hague Convention.  Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,503-06 (Mar. 26, 1986); see also Abbott v. Abbott, 560 U.S. 1, 19 (2010).

## B. History of G*'s Presence in the United States

Unlike many cases involving child custody that implicate the Hague Convention, the parties agree on many of the facts and threshold issues. We summarize their account below.

Prior to the events leading to this litigation, G* lived with his mother in Venezuela, the country where he was born and is a citizen. Balza, a joint citizen of the United States and Venezuela with residence in Massachusetts, had joint custody over G* pursuant to a custody order by a Venezuelan court. As the district court found, Balza visited G* in Venezuela often while he resided there and provided financial support to G*. However, as the relationship between Avendano and Balza deteriorated, the parties sought a custody arrangement through the Venezuelan courts. That order provided for G* to visit Balza in the United States every August and every other December. Because of the poor relationship between Avendano and Balza, the Venezuelan courts had to intervene to enforce the order so that G* could travel to the United States in both 2016 and 2018.

While G* was visiting Balza in the United States for his second yearly visit that began in August 2018, Balza secured U.S. citizenship on behalf of G* that resulted in the forfeiture of G*'s green card. Subsequently, Avendano refused to grant the necessary permission for issuance of G*'s U.S. passport, and a Venezuelan court refused to extend the period of visitation.

Therefore, Balza declined to return G* to Venezuela at the end of his court-mandated visit, claiming that he would not return G* to Venezuela without the proper documents through which he could return to the United States. G* thus continues to live with Balza and has begun attending school in Massachusetts. The district court noted that G* speaks with his mother weekly and stays in contact with his friends in Venezuela.

The political, social, and economic conditions in Venezuela provide the backdrop to G*'s childhood there. As the district court noted, "Venezuela is currently experiencing a period of economic instability and political unrest." The district court made related findings on food insecurity, lack of access to medical care, high levels of violent crime, and human rights violations in Venezuela. However, the district court also noted that Avendano's evidence indicated that the island of G*'s habitual residence in Venezuela "is largely insulated from the larger issues in Venezuela."

### C. District Court's decision to allow G* to remain in the United States

After Balza's retention of G* in the United States beyond the date of the Venezuelan court order, Avendano sought G*'s return by filing suit in federal district court. The parties agreed that Avendano had lawful custody of G* pursuant to a valid Venezuelan court order, that G*'s country of habitual residence was Venezuela,

and that Balza wrongfully retained G* in the United States.  Having conceded that he wrongfully retained G*, Balza argued that G* should nevertheless remain in the United States because G* is a mature child who objects to being returned to Venezuela and because G* would face grave conditions if returned to Venezuela.[2]

After hearing evidence from Avendano, Balza, G*'s Guardian Ad Litem, three expert witnesses, and witnesses from G*'s community in Venezuela, as well as conducting an in-person interview with G*, the district court issued Findings of Fact and Conclusions of Law.  The district court determined that G* was a child of sufficient age and maturity to have his wishes taken into consideration.  While finding that "[t]here is no question in the mind of the [c]ourt that Avendano is a loving and committed parent," the district court then determined that G* genuinely objected to being returned to Venezuela because of ongoing political and societal tumult.  Finally, the district court found that G*'s desire to remain in the United States was reached independently, free of undue influence by Balza.  The district court, however, ruled that it did not need to determine whether G* would face a grave risk of harm if returned to Venezuela.  In light

---

[2] Not at issue in this appeal, the Hague Convention also provides an exception for return where "there is a grave risk that . . . return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b).

of these conclusions, the district court "exercise[d] its discretion granted by Article 13 of the [Hague] Convention and refuse[d] Avendano's petition for return of the child to Venezuela." Avendano appeals that decision.

## II. STANDARD OF REVIEW

Questions of fact, such as whether a child is of sufficient age and maturity to have his views considered and whether the child is subject to undue influence, are reviewed for clear error. Mendez, 778 F.3d at 344; Díaz-Alarcón, 944 F.3d at 311. "Clear-error review is demanding: this standard will be satisfied only if, 'upon whole-record-review, an inquiring court "form[s] a strong, unyielding belief that a mistake has been made."'" United States v. Nuñez, 852 F.3d 141, 144 (1st Cir. 2017) (alteration in original)(quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)). "It is not enough that a finding strikes us as possibly or even probably wrong." Díaz-Alarcón, 944 F.3d at 312 (emphasis omitted). To the extent that the district court interpreted and applied the Hague Convention, we review de novo. Id.

## III. ANALYSIS

Avendano challenges two aspects of the district court's decision: (1) the district court's conclusion that G* met the mature child exception to the Hague Convention's return mandate

- 8 -

and (2) the district court's finding that Balza did not unduly influence G*'s viewpoint.

## A. The Mature Child Exception to the Hague Convention

Avendano claims that the district court erred in determining that G* was of sufficient age and maturity for the court to consider his wishes regarding his return to Venezuela. She points to various pieces of evidence in the record that she argues support a conclusion that G* was not sufficiently mature to have his views considered. Further, Avendano contends that the district court improperly considered G*'s age at the time of the court proceedings rather than "at the time he was wrongfully retained in the United States."

The Hague Convention applies only to children under the age of sixteen. Hague Convention, art. 4. However, it does not set an age at which a child is considered to be sufficiently mature; rather, the determination is to be made on a case by case basis. See Pérez-Vera Report at 433 ("[A]ll efforts to agree on a minimum age at which the views of the child could be taken into account failed, since all the ages suggested seemed artificial, even arbitrary."). The Hague Convention purposefully leaves these determinations "to the discretion of the competent authorities." Id.; see also id. at 460 ("[T]he very nature of [Article 13] exceptions gives judges a discretion – and does not impose upon them a duty – to refuse to return a child in certain

circumstances."). Other Circuits have upheld analyses by district courts requiring both that the child wishes to stay in the United States and objects to being returned. See, e.g., Tann v. Bennett, 648 F. App'x 146, 149 n.3 (2d Cir. 2016); Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 279 (3d Cir. 2007).

The district court examined "whether G*, who will be twelve years old in March 2020, is sufficiently mature to have his views taken into account and if so, whether his views should carry the day." The district court heard testimony from experts and witnesses familiar with G* and both his current and former living conditions. On appeal, Avendano argues that the district court ignored testimony of G*'s Guardian Ad Litem and Avendano's witnesses. Contrary to Avendano's claims, however, the district court considered the testimony of the Guardian Ad Litem at length, and weighed the credibility of the various experts based on the amount of time they spent with G*. Finally, the district court personally interviewed G* in the offices of G*'s Guardian Ad Litem. Upon examination of this evidence, the district court determined that Balza "established by a preponderance of the evidence that G* is a mature child, whose desire to stay with his father in the United States should at least be considered." The district court further concluded that "G* not only prefers to live in the United States, but also objects to being returned to Venezuela." The district court noted that, while G* had positive and negative

- 10 -

things to say about living in Venezuela and now living in the United States, G*'s desire to remain was "very clear, consistent, and rational."

There is no support in the Hague Convention or our caselaw to support Avendano's claim that the district court should have considered G*'s age retrospectively to the time he was retained in the United States. On the contrary, the Hague Convention ceases to apply once the child reaches the age of sixteen regardless of whether the child was wrongfully removed or retained prior to that date. Hague Convention, art. 4. We agree with Balza that "[i]t defies logic that a court would be required to return a child it currently viewed as sufficiently mature over their earnest objections simply because the child may have been less mature a few months earlier."

We conclude that the district court did not clearly err in declining to return G* to Venezuela. As we have noted, the Hague Convention leaves the mature child determination to the discretion of courts.[3] See Hague Convention, art. 13; Pérez-Vera Report at 433. The district court thoughtfully considered the age and maturity of G* and concluded that G* was of the age and maturity to have his views regarding his return to Venezuela considered.

---

[3] For this reason, we also reject Avendano's proposal that we adopt objective criteria by which a court should evaluate a child's maturity.

- 11 -

We afford deference to the district court's decision, in part based on its personal interview with G*, that G* was of sufficient age and maturity to have his views considered. See Díaz-Alarcón, 944 F.3d at 315 (affirming lower court decision pursuant to the Hague Convention primarily on the basis of the deference to district court's discretion and expertise as the finder of fact); see also United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997) ("Deference to the district court's findings of fact reflects our awareness that the trial judge, who hears the testimony, observes the witnesses' demeanor and evaluates the facts first hand, sits in the best position to determine what actually happened."). Thus, based on the record before us, we will not disturb the district court's finding that G* was sufficiently mature.

## B. Undue Influence

Avendano also claims that the district court erred in considering G*'s wishes prior to analyzing whether Balza exerted undue influence over G*. Specifically, Avendano contends that the district court "failed to weigh all of the available evidence regarding [Balza's] influence and brainwashing of the child prior to considering his wishes." Avendano discusses in detail eight pieces of evidence that ostensibly indicate that Balza had undue

influence over G*, including Balza's testimony, allegations of conversations between Balza and G*, and Avendano's testimony.

The Hague Convention is silent on undue influence and instead emphasizes the discretion of the deciding authority in applying the mature child exception. See Pérez-Vera Report at 433. The State Department's analysis of the Hague Convention notes that the court's discretion in applying the age and maturity exception is important in light of the "potential for brainwashing of the child by the alleged abductor." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,510 (Mar. 26, 1986) (Legal Analysis). Specifically, "[a] child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child." Id. In short, the possibility of undue influence over the child is one consideration in the competent authority's assessment of whether a child is of the age and maturity to have their views considered.

The district court noted that it was undisputed that G* wanted to stay with Balza in the United States and that "he has seemingly not waivered [sic] in his decision." The district court then concluded that "G*'s desire to stay in the United States does not appear to be the result of undue influence or coaching by Balza." In so determining, it pointed to testimony from the

Guardian Ad Litem, testimony from Balza, and the court's own interview with G\*. The district court rejected Avendano's claims that Balza unduly influenced G\* both by questioning the truth of Avendano's testimony and by concluding that, even if Avendano's allegations were true, they would not rise to the level of undue influence. In determining that there was no undue influence, the district court noted that "G\* feels like he is free to choose for himself whether he wants to stay in the United States or return to Venezuela," regardless of the truth of that belief in light of conditions in Venezuela and the strained relationship between Avendano and Balza. Finally, in concluding that G\* wished to remain in the United States, the court noted "that current living conditions in Venezuela" were relevant to G\*'s desire to remain in the United States even though the district court ultimately did not find it necessary to decide Balza's claim that G\* would face grave conditions if returned to Venezuela.

The district court did not clearly err in determining that Balza did not unduly influence G\*'s desire to remain in the United States and his objection to returning to Venezuela. The analysis provided by the district court shows that it considered all the relevant evidence.[4] The district court did in fact consider

---

[4] We note that, for purposes of appellate review, it is useful for a district court to separately analyze any claims of undue influence apart from analyzing the child's age and maturity. For example, identifying the specific allegations of undue influence,

the evidence cited by Avendano on this issue. The district court acknowledged Balza's wrongful conduct and concluded that Avendano made out a prima facie case of wrongful retention. A fundamental purpose of the Hague Convention is to protect children from wrongful international removals or retentions by persons determined to obtain their physical or legal custody. Pérez–Vera Report at 430. However, the Pérez–Vera Report also makes clear that a child's objection outweighs this general objective. Id. at 433. Thus, the court's conclusion that G* met the mature child exception after the court met with G* and rejected Avendano's allegations of Balza's undue influence should be afforded deference. See Díaz-Alarcón, 944 F.3d at 315; Young, 105 F.3d at 5.

Furthermore, the district court did not rely solely upon G*'s expressed desire to remain in the United States and objection to being returned to Venezuela. The district court's ruling was also supported by socio-political conditions in Venezuela and G*'s continued access to and communication with Avendano in deciding to retain G* in the United States. In sum, the district court's age and maturity decision properly considered Balza's influence over

what level of influence may be present, and what influence, if any, was proven would clarify findings relevant to influence over the child. Because the district court analyzed all relevant evidence of undue influence and rejected such a conclusion, we discern no error in the district court's decision.

G* and, based on the totality of the circumstances, the court did not clearly err or abuse its discretion in declining to order G*'s return to Venezuela.

## IV. CONCLUSION

As the district court observed, "G* loves both of his parents" and both parents "love him very much."[5]  We conclude that in its analysis of a wrenching set of circumstances, the district court did not clearly err in rejecting a claim that Balza unduly influenced G* and in determining that G* was of the age and maturity to state his viewpoint that he should remain in the United States and not return to Venezuela.  The district court properly exercised its discretion in refusing Avendano's petition for return of G* to Venezuela.  Therefore, the district court's decision is **Affirmed.**

---

[5] As the district court elaborated:

Nothing in the [c]ourt's decision should be taken as commentary about which parent has a better relationship with their son, loves him more, or would be the better parent.  G* is lucky enough to have two caring and devoted parents.  The [c]ourt's decision is limited to the determination that G* is a mature child, who has decided that he wants to stay in the United States. Although he loves Venezuela and his mother, G* recognizes the unrest in his home country and does not want to live there.  This is not an irrational decision. It is therefore up to the courts of this country to determine how best to navigate any custody decisions.