Matter of Luisa JJ. v Joseph II. (2023 NY Slip Op 04699)

Matter of Luisa JJ. v Joseph II.

2023 NY Slip Op 04699

Decided on September 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 21, 2023

CV-23-1391
[*1]In the Matter of Luisa JJ., Respondent,
v
Joseph II., Appellant. (Proceeding No. 1.)
In the Matter of Joseph II., Appellant,
v
Luisa JJ., Respondent. (Proceeding No. 2.)

Calendar Date:September 13, 2023

Before:Garry, P.J., Egan Jr., Aarons, McShan and Mackey, JJ.

Green Kaminer Min & Rockmore LLP, New York City (Richard Min of counsel), for appellant.
Gregory V. Canale, Queensbury, for respondent.

Garry, P.J.
Appeal from an order of the Supreme Court (Adam D. Michelini, J.), entered July 28, 2023 in Washington County, which, among other things, in proceeding No. 1 pursuant to Domestic Relations Law article 5-a, ordered that the parties' child be returned to petitioner's custody in Italy.
Luisa JJ. (hereinafter the mother) and Joseph II. (hereinafter the father) are the parents of a child (born in 2013). In June 2019, the parties entered into a separation agreement, pursuant to which they would share joint legal and physical custody of the child beginning in July 2022, with the child to spend half of the year living with the father in New York and half of the year living with the mother in Italy.[FN1] In November 2022, the parties entered into a stipulation modifying that arrangement and filed the stipulation in Italy, the terms of which provided that they would continue "[s]hared custody" of the child but that the child would remain in Italy with the mother and the father would have certain extended periods of parenting time in New York throughout the year, including annually from December 15 to January 5. Shortly after the child's arrival in New York in December 2022, he disclosed to the father that a minor relative of the mother's boyfriend, who frequently stayed in the child's home, had been sexually abusing him for several months. According to the father, the child stated that he told the mother about the abuse, but she did nothing to stop it. The father reported the abuse to New York law enforcement, and, during a forensic interview, the child relayed consistent allegations to a child advocate. In light of the allegations and the child's stated fear of returning to Italy, the father elected not to return the child to the mother on January 5, 2023.
Italian authorities also began an investigation of the child's allegations, and an Italian court issued an order on January 19, 2023 "provisionally arrang[ing] the exclusive custody and placement of the [child] with the father until the next hearing, reserving any further measures to the outcome," and appointing an expert to evaluate the parties and the child.[FN2] By order dated January 30, 2023, the Italian court rejected the father's request to proceed virtually and explained that its prior order did not permit the father to retain the child in New York for any longer than "strictly necessary for the parties' personal appearance at the next hearing." The father later raised concerns about the child's possible placement with the mother for the duration of the ordered evaluation and indicated his willingness to move to Italy. By order dated March 16, 2023, the Italian court continued the proceedings and "urge[d] the father to follow up on his proposal, transferring the child to Italy with adequate time prior to the date of the next hearing[ ] to allow him to find suitable accommodation for himself and for the child . . . and to ensure the child['s] school attendance at the school system he was already enrolled [*2]in prior [to] his [r]etention abroad." The father and the child did not return to Italy thereafter, and, by order dated April 6, 2023, the Italian court reiterated the need for in-person evaluations and adjourned the proceedings until December 12, 2023.
In May 2023, the mother commenced proceeding No. 1, alleging that the child was being wrongfully retained in New York in violation of the Hague Convention on the Civil Aspects of International Child Abduction (1343 UNTS 89, TIAS No. 11670 [1980] [hereinafter Hague Convention]) and seeking his return to Italy. The father answered and interposed two defenses, or exceptions, provided for in the Hague Convention — that "there is a grave risk that [the child's] return would expose [him] to physical or psychological harm or otherwise place the child in an intolerable situation" (Hague Convention art 13 [b], 1343 UNTS at 101) and that "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [his] views" (Hague Convention art 13, 1343 UNTS at 101). He also moved for dismissal of the mother's petition for failure to state a cause action, the appointment of an attorney for the child and a forensic psychologist, discovery and an evidentiary hearing. The father additionally commenced proceeding No. 2, requesting that Supreme Court exercise temporary emergency jurisdiction under Domestic Relations Law § 76-c to protect the child and award the father temporary legal and physical custody and enjoin the child's return to Italy.
Despite the commencement of a criminal proceeding against the mother and the boyfriend in Italy for "facilitating and failing to prevent [the] sexual abuse" of the child, the Italian court issued a July 21, 2023 order directing that the child be returned to Italy by July 30, 2023 for his in-person evaluation and to permit the mother two weeks of parenting time with the child, to be conducted outside the presence of the boyfriend and the offending minor. The Italian court further "clarif[ied] to the parties the intervened termination of the provisional custody of the child exclusively to the father, resulting in the reinstatement of the previous custody regime, as shared custody to both parents, currently in force."
By letter dated July 25, 2023, the mother requested that Supreme Court enforce the July 21, 2023 order. In response, the father filed an emergency order to show cause to prevent the child from leaving Supreme Court's jurisdiction until both the mother's petition and his cross-petition were resolved. On July 28, 2023, Supreme Court, without conducting a hearing or making any findings of fact or conclusions of law, ordered that the child be returned to Italy and remain there pending further order of the Italian court, subject to the provision that the mother "not expose the child to the company of" the boyfriend and/or the offending minor. The father appeals, and this Court has stayed Supreme Court's order [*3]pending the appeal.
The Hague Convention's "core premise [is] that 'the interests of children in matters relating to their custody' are best served when custody decisions are made in the child's country of 'habitual residence' " (Monasky v Taglieri, 589 US ___, ___, 140 S Ct 719, 723 [2020] [ellipsis omitted], quoting Hague Convention preamble, 1343 UNTS at 98; see Abbott v Abbott, 560 US 1, 20 [2010]). "Accordingly, the Convention generally requires the 'prompt return' of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country" (Golan v Saada, 596 US ___, ___, 142 S Ct 1880, 1888 [2022], quoting Hague Convention art 1 [a], 1343 UNTS at 98; see Guzzo v Cristofano, 719 F3d 100, 105-106 [2d Cir 2013]). The removal or retention of a child is wrongful if "it is in breach of rights of custody attributed to a person . . . under the law of the [s]tate in which the child was habitually resident immediately before the removal or retention . . . and . . . at the time of removal or retention those rights were actually exercised . . . or would have been so exercised but for the removal or retention" (Hague Convention art 3 [a]-[b], 1343 UNTS at 98-99; see Hofmann v Sender, 716 F3d 282, 291 [2d Cir 2013]). "Return of the child is, however, a general rule, and there are exceptions" (Golan v Saada, 142 S Ct at 1888; see Monasky v Taglieri, 140 S Ct at 723). As previously noted, the Convention provides that return is not required if "there is a grave risk that . . . return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation" (Hague Convention art 13 [b], 1343 UNTS at 101) or where a court "finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views" (Hague Convention art 13, 1343 UNTS at 101).
Pursuant to the International Child Abduction Remedies Act (22 USC § 9001 et seq.), which implements the Hague Convention in this country (see Abbott v Abbott, 560 US at 5), it is the petitioning parent's burden to establish, by a preponderance of the evidence, that the child has been wrongfully removed or retained (see 22 USC § 9003 [b], [e] [1] [A]). The parent opposing the child's return then has the burden to establish that one or more of the exceptions provided for in the Convention apply (see 22 USC § 9003 [e] [2]). Relevant here, the grave risk exception must be established by clear and convincing evidence (see 22 USC § 9003 [e] [2] [A]), while the age and maturity exception need only be established by a preponderance of the evidence (see 22 USC § 9003 [e] [2] [B]).
Here, the mother established that the father wrongfully retained the child in New York. Italy, like the United States, is a contracting party to the Hague Convention (see Hague Conference on Private International Law, 28: Convention of 25 Oct. 1980 on the Civil Aspects [*4]of International Child Abduction, Status Table, https://www.hcch.net/en/
instruments/conventions/status-table/?cid=24 [last updated Nov. 14, 2022]). It is undisputed that Italy is the child's country of habitual residence. As for the retention, although the father "provisionally" was granted "exclusive custody and placement of the minor [child]" by the Italian court on January 19, 2023, the parties' November 2022 stipulation provided that the child would reside in Italy with the mother except for certain specified periods, including from December 15 to January 5 annually. The stipulation further made clear that "[a]ny change of [the child's] residence must be previously agreed between the parents." It is undisputed that, but for the father's retention, the mother would have been exercising her custody rights to the child following a prompt return. Thus, as of January 6, 2023, the father was wrongfully retaining the child within the meaning of the Hague Convention. Although several subsequent orders of the Italian court did not expressly discontinue the subject provisional arrangement, the Italian court made clear as early as its January 30, 2023 order that placement with the father was "temporary," that the child's return to Italy was "clearly impl[ied]" and that "the indefinite [r]etention of the child abroad by [the father]
. . . [was] not compatible with the child's current custody regime." Ultimately, the Italian court's July 21, 2023 order "clarif[ied]" the "interven[ing] termination of the provisional custody."
Nonetheless, we agree with the father that Supreme Court abused its discretion in ordering the child's return without making further inquiry as to the Hague Convention exceptions asserted. As the father acknowledges, there is no law requiring " 'that discovery be allowed or that an evidentiary hearing be conducted' as a matter of right in cases arising under the Convention" (West v Dobrev, 735 F3d 921, 929 [10th Cir 2013], quoting March v Levine, 249 F3d 462, 474 [6th Cir 2001], cert denied 534 US 1080 [2002]). That said, courts routinely hold hearings in circumstances such as these (see e.g. Ortiz v Martinez, 789 F3d 722, 724 [7th Cir 2015]; Seaman v Peterson, 766 F3d 1252, 1257, 1259-1260 [11th Cir 2014]; Souratgar v Lee, 720 F3d 96, 100-101 [2d Cir 2013]; Charalambous v Charalambous, 627 F3d 462, 465-466 [1st Cir 2010]; Baran v Beaty, 526 F3d 1340, 1344 [11th Cir 2008]; Tsai-Yi Yang v Fu-Chiang Tsui, 499 F3d 259, 269 [3d Cir 2007]). It is also common to conduct an in camera interview (see e.g. Avendano v Balza, 985 F3d 8, 14 [1st Cir 2021]; Rodriguez v Yanez, 817 F3d 466, 471 [5th Cir 2016]; Vasconcelos v Batista, 512 F Appx 403, 406 [5th Cir 2013]; Simcox v Simcox, 511 F3d 594, 599, 603-604 [6th Cir 2007]; Tsai-Yi Yang v Fu-Chiang Tsui, 499 F3d at 269; de Silva v Pitts, 481 F3d 1279, 1286-1288 [10th Cir 2007]), direct and/or consider the results of expert evaluations (see e.g. DÍaz-AlarcÓn v FlÁndez-Marcel,944 F3d 303, 308 [1st [*5]Cir 2019]; In re Matter of NIR, 797 F Appx 23, 25 [2d Cir 2019]; Ortiz v Martinez, 789 F3d at 724; Mauvais v Herisse, 772 F3d 6, 17-18 [1st Cir 2014]; Kufner v Kufner, 519 F3d 33, 37-38 [1st Cir 2008]; Danaipour v McLarey, 286 F3d 1, 8 [1st Cir 2002]) and/or appoint and hear from an attorney for the child who is the subject of a return petition (see e.g. Avendano v Balza, 985 F3d at 13-14; Yaman v Yaman, 730 F3d 1, 7 [1st Cir 2013], cert denied 572 US 1060 [2014]; Danaipour v McLarey, 286 F3d at 8; Taveras v Morales, 22 F Supp 3d 219, 229 [SD NY 2014], affd 604 Fed Appx 55 [2d Cir 2015]; Diaz Arboleda v Arenas, 311 F Supp 2d 336, 338 [ED NY 2004]). Here, the submissions before Supreme Court raised genuine issues of material fact with respect to both exceptions invoked by the father, warranting a hearing and some assessment of the child's position.
As for the grave risk exception, safety of the child is paramount (see Simcox v Simcox, 511 F3d at 608; Van De Sande v Van De Sande, 431 F3d 567, 572 [7th Cir 2005]), and this country's "policy, as articulated by the Department of State, is to view sexual abuse as an intolerable situation" (Danaipour v McLarey, 286 F3d at 15, citing 51 Fed Reg 10510 [1986]; see Golan v Saada, 142 S Ct at 1894). It is also accepted that returning a child to such an intolerable situation would subject the child to a grave risk of psychological harm (see 51 Fed Reg 10510 [1986]; see also Baxter v Baxter, 423 F3d 363, 373 n 7 [3d Cir 2005]). Significantly, "[t]he gravity of a risk involves not only the probability of harm, but also the magnitude of the harm if the probability materializes" (Van De Sande v Van De Sande, 431 F3d at 570; see Acosta v Acosta, 725 F3d 868, 876 [8th Cir 2013]), and the Hague Convention "is weighted towards protection of the child when there is credible evidence of sexual abuse" (Danaipour v McLarey, 286 F3d at 16; see DÍaz-AlarcÓn v FlÁndez-Marcel, 944 F3d at 312).
As previously noted, the father's affidavit reflects that the child made prompt, detailed disclosures of extended sexual abuse experienced in Italy. According to that affidavit, the child also reported that abuse to the mother, who did nothing to intervene or prevent it and instead "forced" the child to continue sleeping in the same bed as the offending minor. As a result, the child has developed a fear of returning to the mother's custody in Italy. Supreme Court was also provided with a State Police incident report, which reflects that the child made consistent allegations regarding the abuse about a week following his disclosure to the father while interviewed by a child advocate. The submissions further included confirmation of the Italian criminal proceedings against the mother and the boyfriend for not only their alleged failure to prevent the abuse but their facilitation thereof, and there is no information in the record regarding the current status of those proceedings. Accepting these serious allegations as true (see Van De [*6]Sande v Van De Sande, 431 F3d at 570), it was an abuse of discretion to summarily reject the father's first exception.
Turning to the father's second exception, a " 'child's views concerning the essential question of [his or her] return or retention may be conclusive, provided [the child] has . . . attained an age and degree of maturity sufficient for [his or her] views to be taken into account' " (de Silva v Pitts, 481 F3d at 1286 [emphasis omitted], quoting Elisa PÉrez-Vera, Explanatory Report, 1980 ConfÉrence de La Haye de droit international privÉ, EnlÈvement d'enfants, in 3 Actes et documents de la QuatorziÈme session at 433, ¶ 30 [1982], English translation available at https://assets.hcch.net/docs/a5fb103c-2ceb-4d17-87e3-a7528a0d368c.pdf [last accessed Sept. 13, 2023]).[FN3] The Hague Convention, applicable only to children under the age of 16, "does not set an age at which a child is automatically considered to be sufficiently mature"; it is instead accepted that maturity is a "fact-intensive and idiosyncratic . . . inquiry" (Tsai-Yi Yang v Fu-Chiang Tsui, 499 F3d at 279 [internal quotation marks and citation omitted]; see Vasconcelos v Batista, 512 F Appx at 406; PÉrez-Vera at 433, ¶ 30 ["all efforts to agree on a minimum age at which the views of the child could be taken into account failed, since all the ages suggested seemed artificial, even arbitrary"]). Although there is no established test for assessing maturity, indications of maturity may include "the child's age . . . [and] ability to express mixed feelings[ ] and . . . plan past obstacles" (Romero v Bahamonde, 857 F Appx 576, 583 [11th Cir 2021]). "[A] child's 'generalized desire' to remain in the United States is 'not necessarily sufficient to invoke the exception,' " but " 'particularized objections to returning to' the former country of residence" should be considered (Vasconcelos v Batista, 512 F Appx at 407, quoting Tsai-Yi Yang v Fu-Chiang Tsui, 499 F3d at 279; see Dubikovskyy v Goun, 54 F4th 1042, 1048 [8th Cir 2022]).
The submissions before Supreme Court again included the father's affidavit attesting to the fact that the child repeatedly advocated for himself with regard to the subject abuse, seeking help from both of his parents even after the mother's alleged failure to intervene. The affidavit also makes clear the child's particularized fear of returning to the mother's custody given that failure and her alleged facilitation of the sexual abuse that he suffered. The record also contained an email exchange regarding the child's lack of communication with the mother following his disclosure to the father, in which the father describes the child as "a mature smart boy" who was thus being permitted to determine his own communication preferences. Also before the court was the transcript of a telephone call between the child and the mother, in which the child, then nearly 10½ years old, articulately opposed the mother's efforts to secure his return, citing the mother's "lies[*7]" as to why he is in New York. Although the parties debate the influence each of them has had over the child's position, any undue influence also presents an issue of fact (see Avendano v Balza, 985 F3d at 13; Tsai-Yi Yang v Fu-Chiang Tsui, 499 F3d at 279; see generally 51 Fed Reg 10510 [1986] ["A child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child"]). Accepting the foregoing submissions as true, the father has raised a genuine issue of fact as to the child's objection and degree of maturity, and it was therefore a further abuse of discretion to summarily dispense with the father's second exception. Upon remittal, the court must evaluate the child's present degree of maturity (see generally Avendano v Balza, 985 F3d at 14).
Bearing in mind that the Hague Convention requires expeditious resolution of these issues (see Hague Convention arts 2, 11, 1343 UNTS at 98, 100; Golan v Saada, 142 S Ct at 1888-1889; see also Federal Judicial Center, James D. Garbolino, The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges at 161-162 [2d ed 2015], available at https://www.fjc.gov/sites/default/files/
2015/Hague%20Convention%20Guide.pdf [last accessed Sept. 13, 2023]), we remit the matter to Supreme Court to commence the required hearing within 20 days of this Court's decision. We urge the court to clearly state the basis for its decision on remittal so as to best facilitate any potential appellate review of the court's ultimate discretionary determination (see Garbolino at 185; see also de Silva v Pitts, 481 F3d at 1285-1286; PÉrez-Vera at 460, ¶ 113).
The remaining contentions have been considered and determined to lack merit.
Egan Jr., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision, with a hearing to be commenced within 20 days.

Footnotes

Footnote 1: This Court previously dismissed the parties' divorce action on jurisdictional grounds (Joseph II. v Luisa JJ., 201 AD3d 43, 48-49 [3d Dept 2021]), and the parties advise that a new divorce action is pending in Supreme Court.

Footnote 2: We note that the foreign orders provided to this Court do not appear to be certified translations.

Footnote 3: Elisa PÉrez-Vera's Explanatory Report is recognized as the official history and commentary on the Hague Convention (see 51 Fed Reg 10503) and has been frequently referenced by courts (see e.g. Golan v Saada, 142 S Ct at 1893 n 8; Monasky v Taglieri, 140 S Ct at 726, n 2; Abbott v Abbott, 560 US at 19).