14-4734-cv
Tann v. Bennett

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of May, two thousand sixteen.

PRESENT: ROBERT D. SACK,
REENA RAGGI,
CHRISTOPHER F. DRONEY,
*Circuit Judges.*

-------------------------------------------------------------------------

LISA TANN,

*Petitioner-Appellant*,

v.                                                      No. 14-4734-cv

GEORGE ALAN BENNETT, AKA Alan Bennett, AKA
Alan Dorris, MIRANDA BENNETT,

*Respondents-Appellees.*[*]

-------------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANT: | SHARON LYNN NOSENCHUCK (Diana M. Straube, *on the brief)* Neighborhood Legal Services, Inc., Buffalo, New York. |
| FOR APPELLEE: | Noemi Fernandez, Esq., Buffalo, New York. |

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

1

Appeal from a judgment of the United States District Court for the Western District of New York (Jeremiah J. McCarthy, *Magistrate Judge*).[1]

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on November 25, 2014, is AFFIRMED.

Petitioner Lisa Tann, a citizen of the United Kingdom who resides in Northern Ireland and is the mother of now 14-year-old J.D., appeals from a judgment of the district court dismissing her petition for J.D.'s repatriation under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention" or "Convention"), Oct. 25, 1980, T.I.A.S, No. 11,670, 1343 U.N.T.S. 89, and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 et seq., and allowing J.D. to remain in the United States with respondents George Alan Bennett and Miranda Bennett, J.D.'s father and stepmother, pending a custody determination by New York State.[2]  Tann argues that the district court erred in relying on J.D.'s objection to returning to Northern Ireland in denying her petition because J.D. was not sufficiently

---

[1] Magistrate Judge McCarthy was, with the consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 73 of the United States District Court for the Western District of New York, designated to conduct all proceedings in this matter, including the entry of final judgment.

[2] While this appeal was pending, the Family Court of Orleans County, State of New York, granted George Alan Bennett sole custody of J.D.  See Family Court Order, Tann v. Bennett, No. 14-4734-cv (2d Cir.), ECF No. 69, Ex. C; see also Tann v. Bennett, 807 F.3d 51 (2d Cir. 2015).  Because Tann had the opportunity to raise a jurisdictional challenge in that forum, we do not review her challenge to Magistrate Judge McCarthy's conclusion that, once repatriation was denied, New York had jurisdiction to determine J.D.'s custody on the merits.  See Decision & Order at 13–14, Tann v. Bennett, No. 1:13-cv-00823 (JJM) (W.D.N.Y. Nov. 24, 2014), ECF No. 55.

mature to make such a decision and respondents unduly influenced his testimony. While we review de novo the district court's interpretation of the Hague Convention and its application to the facts it has found, we review the court's underlying factual determinations only for clear error. See Blondin v. Dubois, 238 F.3d 153, 158 (2d Cir. 2001). In so doing, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

The Hague Convention aims to protect children "from the harmful effects of their wrongful removal or retention" and to restore the "status quo, by means of the prompt return of children wrongfully removed to or retained in any Contracting State." Gitter v. Gitter, 396 F.3d 124, 129–30 (2d Cir. 2005) (internal quotation marks omitted). Thus, the Convention demands the return of a wrongfully removed child to the child's habitual residence unless respondent establishes that an exception applies. See 22 U.S.C. § 9003(e)(2).

Article 13 of the Hague Convention "permits a court to refuse to order the return of [a wrongfully retained] child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Blondin v. Dubois, 238 F.3d at 166 (internal quotation marks omitted). Whether a child is "old enough and mature enough" for his "views to be considered" is a question of fact, as is the determination that a child actually objects to returning to his country of habitual residence. Id. at 158.

We identify no clear error in the district court's conclusion that J.D. had "attained an age and degree of maturity at which it [wa]s appropriate to take account of [his]

3

views." Hague Convention, art. 13. "The Convention does not establish a minimum age at which a child is old enough and mature enough to trigger this provision." Blondin v. Dubois, 238 F.3d at 166.

After observing then nearly thirteen-year old J.D.'s responses and demeanor during an in camera interview, the district court found the child "to be a very intelligent and decent young man," and concluded that "J.D.'s desire to remain in New York should be respected" pending resolution of the state custody proceedings. Decision & Order at 12, Tann v. Bennett, No. 1:13-cv-00823 (JJM) (W.D.N.Y. Nov. 24, 2014), ECF No. 55 ("Decision & Order"). In so ruling, the court implicitly found J.D. sufficiently mature for the exception to apply. "This finding, relying as it (in part) did on the Court's personal observations of [J.D.], is of the sort peculiarly within the province of the trier of fact and is entitled to considerable deference." Blondin v. Dubois, 238 F.3d at 167 (internal quotation marks omitted); see United States v. Cuevas, 496 F.3d 256, 267 (2d Cir. 2007) (explaining that "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," but noting that "[f]actual findings based on the testimony and observation of witnesses are entitled to particular deference" (internal quotation marks omitted)). Nothing in the transcript of J.D.'s in camera interview suggests that the court's maturity finding was clearly erroneous. Accordingly, because Magistrate Judge McCarthy was in the best position to gauge J.D.'s maturity level, we will not disturb his finding.

Insofar as Tann claims that J.D. expressed only a "preference" to stay in the United States, as opposed to a specific objection to returning to Northern Ireland, the record shows otherwise. J.D. testified that (1) he did not always feel safe in Northern Ireland, (2) he "would really feel bad" if he were returned, and (3) he might hurt himself or others if he was forced to return. Decision & Order at 6–7 (internal quotation marks omitted). On this record, we cannot conclude that the district court clearly erred in finding that J.D. objected to returning to Northern Ireland.[3]

Nor do we identify error in the district court's refusal to consider that respondents' wrongful retention of J.D. contributed to J.D.'s preference for living in the United States. Nothing in our precedent requires such consideration. Rather, our precedent instructs, without qualification, that "a court may refuse repatriation <u>solely</u> on the basis of a considered objection to returning by a sufficiently mature child." <u>Blondin v. Dubois</u>, 238 F.3d at 166 (emphasis in original).

As for Tann's contention that respondents unduly influenced J.D.'s testimony, the district court specifically found the child's testimony was "not the product of undue influence" by respondents "but instead reflect[ed] the realities of his current situation." Decision & Order at 12. During his <u>in camera</u> interview, J.D. expressed his

---

[3] <u>Tsai-Yi Yang v. Fu-Chiang Tsui</u>, 499 F.3d 259 (3d Cir. 2007), cited by Tann, warrants no different conclusion. There, the Third Circuit held that a district court did not clearly err in concluding that a ten-year old's reasons for wanting to stay in the United States did not invoke the exception because they indicated only "a more generalized desire" to remain in the United States, rather than "particularized objections to returning to Canada." <u>Id.</u> at 279. Unlike the child in <u>Tsai-Yi Yang</u>, J.D. expressed not only a preference for remaining in the United States, but also particularized complaints about both his prior time in Northern Ireland and the prospect of returning there.

5

understanding of the oath he had taken to tell the truth, <u>see</u> <u>id.</u> at 6, and stated that his parents and stepmother "did not try to influence him to testify in any particular manner" and counseled him "just to be honest," <u>id.</u> (internal quotation marks omitted). On this record, we cannot conclude that the district court clearly erred in finding no undue influence.

We have considered Tann's remaining arguments and conclude that they are without merit. We therefore AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court