# United States Court of Appeals

## For the First Circuit

No. 21-1522

DANILO DE PAULA VIEIRA,

Appellee, Petitioner,

v.

DJAIANE AQUINO DE SOUZA,

Appellant, Respondent.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Gelpí, Circuit Judges.

Shamis N. Beckley, with whom Annabel Rodríguez was on brief,
for appellant.
Wendy O. Hickey, with whom Valerie E. Cooney was on brief,
for appellee.

January 7, 2022

**GELPÍ**, **Circuit Judge**.  In this Hague Convention case, Danilo De Paula Vieira ("Vieira") seeks the return of his seven-year-old child from Massachusetts to Brazil, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-11, which implements the Hague Convention.  We hereinafter will refer to the child as "Minor S.V.".

On April 27, 2021, Vieira filed a petition pursuant to the Hague Convention seeking the return of Minor S.V. to Brazil and alleging that Djaiane Aquino De Souza ("De Souza") removed Minor S.V. from Brazil to Massachusetts without his authorization. The district court determined that De Souza wrongfully removed Minor S.V. and that she failed to establish that Minor S.V. would be subject to a grave risk of harm in Brazil.  Consequently, the district court granted Vieira's petition and ordered that Minor S.V. be returned to Brazil within thirty days of July 1, 2021. Minor S.V.'s mother, De Souza, appeals the district court's decision, which has been stayed during the pendency of review by this Court.

Appellant—Respondent De Souza contends the district court erred (1) in concluding that ICARA's grave risk exception

did not apply; and (2) in failing to consider whether the mature child exception of the Act applied.  We affirm.

I.    RELEVANT FACTUAL BACKGROUND

*Vieira and De Souza's relationship*

Vieira is a Brazilian national who began a romantic relationship with De Souza around 2008-2009 in Minas Gerais, Brazil.  De Souza is a citizen of the United States.  The parties lived together in Brazil until December 2018, when De Souza relocated to Massachusetts.

In January 2014, Vieira and De Souza had their only child together, Minor S.V., in Contagem, Brazil.  Minor S.V. is a dual citizen of Brazil and the United States.  Throughout the years, Vieira and De Souza had an off-and-on consensual relationship, in which they would periodically end and resume the relationship in short succession.  During one of the breakups, Vieira had another child.  Minor S.V. and the half-sibling were raised together. Vieira and De Souza's relationship lasted eleven years and was characterized by multiple incidents of domestic verbal abuse. Vieira verbally threatened De Souza several times and once broke De Souza's telephone during an argument.

During an argument between the parties in 2017, Vieira grabbed and placed Minor S.V. in his car, proceeding to drive recklessly while threating De Souza. As a result, De Souza sought and received a restraining order against Vieira.   De Souza

separately sought psychiatric treatment to deal with the ongoing abuse. The district court found that De Souza revoked the restraining order upon reconciling with Vieira, although De Souza disputed this fact at trial. De Souza left Brazil and moved to Massachusetts in December 2018, leaving Minor S.V. with Vieira in Brazil. Vieira and De Souza's relationship ended in April 2020.

*Minor S.V.'s removal from Brazil*

Minor S.V. remained with Vieira in Brazil for almost two years until Minor S.V. was taken to Massachusetts without Vieira's consent. No formal custody order was issued during this time. On November 22, 2020, Minor S.V.'s maternal aunt offered to take the child to a follow-up appointment for Minor S.V.'s recent adenoidectomy and tonsillectomy. Vieira had no qualms with the proposal. The maternal aunt, however, instead took Minor S.V. to the airport and put the child on a flight to Massachusetts.[1] Vieira reached out to Minor S.V.'s maternal aunt that night but received no response. On November 23, 2020, De Souza called Vieira to let him know that Minor S.V. was with her in Massachusetts and would not be returning to Brazil. On May 21, 2021, De Souza sought and obtained a restraining order against Vieira from the Chelsea

---

[1] Minor S.V.'s passport had an authorization signed by Vieira for Minor S.V. to travel. It is unclear if the authorization covered domestic or international travel.

- 4 -

District Court in Massachusetts. To this day, Minor S.V. remains with De Souza in Massachusetts.

*Vieira's Petition and the district court's decision*

On April 27, 2021, Vieira filed a petition in the United States District Court for the District of Massachusetts for the return of Minor S.V. to Brazil pursuant to the Hague Convention and ICARA. Vieira also filed an emergency ex parte motion, seeking an order directing De Souza not to remove Minor S.V. from Massachusetts. The district court scheduled a hearing for June 17, 2021. Present at the hearing were Vieira's counsel and interpreter as well as De Souza, appearing pro se without an interpreter. In lieu of a preliminary injunction hearing, the district court consolidated the hearing with the trial scheduled for July 1, 2021, pursuant to Federal Rule of Civil Procedure 65(a).

During the one-day bench trial, Vieira was present by way of video teleconference and was represented by counsel assigned pro bono. De Souza appeared pro se.[2] Both parties testified through an interpreter.

Vieira stated that Minor S.V. has never lived outside of Brazil and only speaks, reads, and writes Brazilian Portuguese.

---

[2] De Souza was not represented by counsel in the district court proceedings. This court appointed pro bono counsel for her appeal.

- 5 -

Additionally, Vieira testified that although he tries to stay in frequent contact with Minor S.V., there are times when he has been unable to speak with the child for weeks. Vieira was not cross-examined by De Souza. For her part, De Souza raised the affirmative defense of grave risk, alleging that Minor S.V. would be exposed to physical or psychological harm if returned to Brazil.

De Souza testified that Minor S.V. has witnessed Vieira engage in violent acts directed against De Souza and Vieira's own mother. When cross-examined by Vieira's counsel, De Souza stated that she lived with Vieira in Brazil because he threatened to take Minor S.V away from her if she left. During closing arguments, De Souza added that she fears for Minor S.V.'s safety if the child was sent back to Brazil. De Souza also affirmed that Minor S.V. is currently attending school in Massachusetts and stated that "if you ask [Minor S.V.], [the child] will tell you [of wanting] to stay here."

The district court issued its ruling from the bench and granted Vieira's petition for the return of Minor S.V. to Brazil. We subsequently ordered the district court to issue findings of fact and conclusions of law. In its written findings, the district court concluded that "De Souza failed to demonstrate that there existed 'a grave risk that [the child's] return would expose [Minor S.V.] to physical or psychological harm' because she proffered no evidence that Vieira ever threatened or abused the Minor." The

district court did not identify the mature child defense as a distinct issue that had been raised at the bench trial but nevertheless observed that there was no evidence that Minor S.V. had attained an age and degree of maturity sufficient to take the child's preference into account.

On July 22, 2021, we granted a stay of the district court's ruling pending appeal. On July 28, 2021, we appointed pro bono counsel to represent De Souza and set an expedited briefing schedule.

II.  Discussion

The Hague Convention is a multilateral treaty designed to address "the problem of international child abductions during domestic disputes. It . . . provid[es] for the prompt return of children wrongfully removed to or retained in any Contracting State." Neergaard-Colón v. Neergaard, 752 F.3d 526, 529-30 (1st Cir. 2014) (quoting Abbott v. Abbott, 560 U.S. 1, 8 (2010)) (citation omitted) (internal quotation marks omitted). "Notably, an order of return pursuant to the Hague Convention is not a final determination of custody rights. It simply ensures that custodial decisions will be made by the courts of the children's country of habitual residence." Id. (citing Abbott, 560 U.S. at 9). Under ICARA, De Souza, as the party opposing return of the child, bears the burden of establishing the grave risk exception by clear and convincing evidence and the mature child exception by a

preponderance of the evidence. See 22 U.S.C. § 9003(e)(2). We review legal issues, including the interpretation of the Hague Convention, de novo. Da Silva v. de Aredes, 953 F.3d 67, 73 (1st Cir. 2020). We review for clear error the district court's determination concerning any defenses. Id. at 72.

### a. The Grave Risk Exception

<u>The District Court Did Not Err in Finding that Returning Minor S.V. to Brazil Would Not Expose the Child to a Grave Risk of Harm.</u>

The district court found that Brazil was Minor S.V.'s country of habitual residence, that Vieira was exercising custody over Minor S.V. at the time of the child's removal, and that De Souza's removal and retention of Minor S.V. in the United States was therefore wrongful. See Hague Convention art. 3. Neither party disputes that portion of the district court's findings. The district court then found that De Souza failed to show that there was a grave risk that Minor S.V.'s return would expose the child to physical or psychological harm. See Hague Convention art. 13(b).

At the outset, we acknowledge that De Souza's burden of proof for the grave risk defense is quite high: ICARA provides that the respondent opposing the child's return has the burden of establishing the grave risk defense by clear and convincing evidence. See 22 U.S.C. § 9003(e)(2)(A); Danaipour v. McLarey, 286 F.3d 1, 13 (1st Cir. 2002). Additionally, exceptions to the

Hague Convention should be construed narrowly by courts. Danaipour, 286 F.3d at 14. This serves the Hague Convention's strong presumption in favor of the child's return. Id. at 13; 22 U.S.C. § 9001(a)(4) (requiring a child's prompt return unless one of the "narrow exceptions" applies). The grave risk defense may not be used "as a vehicle to litigate (or relitigate) the child's best interests." Danaipour, 286 F.3d at 14 (quoting Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,510 (Mar. 26, 1986)).

The district court found that De Souza failed to meet her required evidentiary burden. The court heard De Souza's testimony that Vieira verbally abused and threatened her, broke her phone, and forced her to have an abortion. It also considered the incident where, following a verbal altercation, Vieira put Minor S.V. in the car and drove in a dangerous manner while continuing to threaten De Souza, leading to the issuance of a restraining order against Vieira. However, the district court found that none of the abuse was directed at Minor S.V.

De Souza argues on appeal that domestic abuse of a parent alone is sufficient to establish grave risk to the child, and that the district court erred as a matter of law in concluding that Vieira's abuse needed to be directed at Minor S.V. De Souza relies on authority from this Circuit, namely Walsh v. Walsh, 221 F.3d 204 (1st Cir. 2000), and the Sixth circuit in Simcox v. Simcox,

511 F.3d 594 (6th Cir. 2007), for the proposition that abuse does not need to be directed at the child for it to implicate the grave risk exception.  The district court's reasoning, however, is not in tension with these precedents.  To the contrary, the district court recognized the "credible social science literature" which establishes that spousal abusers are also likely to be child abusers. But the district court nonetheless found that De Souza failed in this case to meet her burden of proof that the abuse was of a nature sufficient to trigger the grave risk exception.

The district court further considered the precedent cited by De Souza and distinguished it from the case at bar.  It determined that the abuse did not rise to the level of the abuse in Walsh, where the petitioner exhibited a "more generalized pattern of violence, including violence directed at his own children."  Walsh, 331 F.3d at 219.  Moreover, the district court determined that De Souza had not established a grave risk to Minor S.V., and, under our precedent, "'grave' means more than a serious risk."  Danaipour, 286 F.3d at 14 (citing Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. at 10,510).

De Souza further argues that the district court failed to make the necessary factual findings regarding the impact that Vieira's abuse of her may have had on Minor S.V., and specifically failed to make any factual findings about the risk of future

psychological harm to Minor S.V.  De Souza posits that the district court was required to make factual findings regarding the likelihood that Vieira's abusive conduct put Minor S.V. at a grave risk of psychological harm.

In its findings of fact, the district court accepted De Souza's testimony regarding the incident where Vieira drove dangerously with Minor S.V. in the car while threatening De Souza. The district court also noted that both state and federal law have recognized an increased risk of psychological injury to children when they are in contact with a spousal abuser.  Nevertheless, the district court found that "De Souza failed to demonstrate that there existed 'a grave risk that [Minor S.V.'s] return would expose [Minor S.V.] to physical or psychological harm.'"  The district court found that the evidence De Souza presented did not rise to the level needed for an article 13(b) defense.  See, e.g., Whallon v. Lynn, 230 F.3d 450, 460 (1st Cir. 2000) (holding that verbal and physical abuse of a mother, when not directed at the child, did not give rise to the type of psychological harm contemplated by the Hague Convention).

The role of the district court in Hague Convention cases is one of factfinder.  See Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 311 (1st Cir. 2019); Taglieri v. Monasky, 907 F.3d 404, 408 (6th Cir. 2018) ("[W]e must let district courts do what district courts do best -- make factual findings . . . ."), aff'd,

- 11 -

140 S. Ct. 719 (2020).  The grave risk finding requires that the court identify the legal standard and then answer the fact-based question of whether the respondent has shown that the child would be exposed to a grave risk if returned.  Da Silva, 953 F.3d at 72.

The district court determined that the return of Minor S.V. will not expose the child to physical or psychological harm. The record reflects that De Souza did not allege that any harm befell Minor S.V. during the two-year period between 2018 and 2020 following De Souza's relocation from Brazil to the United States, in which Minor S.V. resided in Vieira's care.  Nor was De Souza so concerned for Minor S.V.'s safety under Vieira's care that she refused to leave Minor S.V. in Vieira's custody.  On the record before us, the district court committed no clear error in its finding.

b. Mature child Defense

THE DISTRICT COURT DID NOT ERR IN DECLINING TO CONSIDER MINOR S.V.'s VIEWS

Article 13 of the Hague Convention includes an unnumbered provision that carves out a defense for the party opposing return.  This defense, grounded in a mature child's objection to repatriation, permits a court to "refuse to order the return of the child if it finds that [the minor] objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views." Blondin

v. Dubois, 238 F.3d 153, 166 (2d. Cir. 2001) (quoting Hague Convention art. 13).

De Souza contends that the district court erred in failing to conduct any analysis of Minor S.V.'s maturity after she alluded to the child's preferences at trial. Namely, she posits that the district court failed to speak to Minor S.V., appoint a guardian ad litem or child psychologist to represent the child's interests, or assess any of the other factors relevant to determining the child's maturity and thus whether Minor S.V.'s views should be heard. Further, De Souza argues that "while there is no one way for a district court to assess a child's maturity, here there are no factual findings as to [Minor S.V.'s] maturity at all." De Souza finally asserts that, because she appeared pro se and through a translator at the bench trial, the district court had a duty to be solicitous of any arguments she established, even if she raised the latter only incompletely or obliquely. In light of the important interests at stake, De Souza petitions that we remand to the district court to allow for further factual development on the mature child exception.

As a threshold matter, it is not clear the district court recognized that De Souza had invoked the mature child defense at all. De Souza posits that the defense was raised at the bench trial and that the district court, in its factual findings and rulings of law, acknowledged that. To wit, De Souza contends that

"[t]here is no indication that the [d]istrict [c]ourt considered the exception waived. Nor did the [d]istrict [c]ourt indicate that it was unable or unwilling to consider De Souza's statement that [the child] wanted to stay with [the child's] mother and would tell the [d]istrict [c]ourt that if asked." De Souza thus argues that the district court erred when it "simply decided that it did not have to consider the issue because the child was only seven and no other evidence of [the child's] maturity was elicited during [the] mother's pro se testimony."

Despite De Souza's contentions, however, the district court in its written findings declined to isolate the mature child exception from the other questions at issue, simply observing that there was no evidence that Minor S.V. was sufficiently mature to be consulted. Insofar as the district court's written findings reflect a view that the mature child issue had never been raised, such a determination is eminently supportable from the record. Indeed, De Souza only mentioned in passing that Minor S.V. had acclimated to Massachusetts and did not want to return to Brazil, and she did so only one time in her closing argument. Further, De Souza did not mention the child's maturity at all in her testimony. While De Souza is surely correct that courts must be mindful of the challenges faced by pro se litigants and construe their arguments liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), "[o]ur duty to be 'less stringent' with pro se complaints

- 14 -

does not require us to conjure up unpled allegations." McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979) (quoting Hurney v. Carver, 602 F.2d 993 (1st Cir. 1979)). As such, the district court did not abuse its discretion in declining to raise the mature child issue sua sponte or assist De Souza in developing the defense. See also Barnett v. Hargett, 174 F.3d 1128, 1132 (10th Cir. 1999) ("[A] district court should not 'assume the role of advocate for the pro se litigant,' and may 'not rewrite a petition to include claims that were never presented.'") (first quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); and then quoting Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998), cert. denied, 525 U.S. 1151 (1999)).

As to the merits of the defense, we review the district court's determination whether a child is of sufficient age and maturity to have their views considered for clear error. Avendano v. Balza, 985 F.3d 8, 13 (1st Cir. 2021). "The Hague Convention applies only to children under the age of sixteen. However, it does not set an age at which a child is considered to be sufficiently mature; rather, the determination is to be made on a case-by-case basis." Id. (citation omitted). To the extent that the district court recognized the mature child defense as having been raised, it found that De Souza failed to meet her burden of proof that Minor S.V. was of a sufficient age and maturity to have her views considered.

De Souza bore the burden of proof yet provided no evidence as to Minor S.V.'s maturity. Despite De Souza's claims to the contrary, nothing in the district court's decision suggests that a seven-year-old may never be mature enough to express an opinion. Rather, the district court determined that the mother had not proffered sufficient evidence to support a finding that the child in this case was mature enough to have his or her views considered. Given that De Souza presented no evidence as to the child's maturity, this determination was not clearly erroneous. Finally, the district court's factual findings were sufficiently detailed given the lack of evidence presented on the mature child defense.

## III. Conclusion

We stress that this case does not involve a determination of custody. Indeed, the Hague Convention is explicit that "[a] decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue." Hague Convention art. 19; see also Yaman, 730 F.3d at 22-23; Mauvais v. Herisse, 772 F.3d 6, 21 (1st Cir. 2014). Instead, implementation of the return remedy here means that the courts of Brazil -- Minor S.V.'s country of habitual residence -- will make the appropriate custodial and family law determinations. See Neergaard-Colón, 752 F.3d at 530 (citing Abbott, 560 U.S. at 9); Charalambous v. Charalambous, 627 F.3d 462, 469-70 (1st Cir.

2010) (per curiam) ("We point out that [the mother] is free, in the courts of [the children's country of habitual residence], to seek custody of the children and such other orders as may become necessary as to the children.").

For all the foregoing reasons, we find no clear error in the district court's findings of fact that, as regards the narrow grave risk exception, returning Minor S.V. to Brazil would not expose the child to physical or psychological harm or otherwise place Minor S.V. in an intolerable situation. We further find (1) that the district court did not err by not sua sponte developing the mature child defense for De Souza, and (2) the court did not err in rejecting application of the defense on the merits.

Therefore, the decision of the district court is

**Affirmed**.